STELL MANUFACTURING CORPORATION et al., Appellants, *v.*
CENTURY INDUSTRIES, INC., et al., Respondents.

First Department, June 8, 1965.

*Morris B. Abram* of counsel (*Roger Goldburg* and *Richard K. Bernard* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellants.

*Samuel Gottlieb* of counsel (*Emanuel Baetich, Bernard Beitel* and *Stephen A. Lefkowitz* with him on the brief; *Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for respondents.

*Per Curiam.* This is an action brought pursuant to the New York Simplified Procedure for Court Determination of Disputes (CPLR 3031–3037). The underlying facts are as follows, Plain-

tiffs are dress manufacturers. Defendants are their factors. In 1958 plaintiffs got into financial difficulty and a creditors' committee took over their affairs. This committee retained Joseph S. Herbert & Co. (hereinafter Herbert), a firm of certified public accountants acknowledged to be expert in the field of plaintiffs' business. They made an examination of plaintiffs' books. This examination was loosely referred to in subsequent proceedings as the "1958 audit." It was not an audit and Herbert could not have made an audit from the books kept by plaintiffs. One of the services provided for in plaintiffs' factoring contract with defendants was that defendants would keep detailed records of plaintiffs' sales transactions with their customers, and plaintiffs therefore did not keep such records. Herbert did not see any of these records kept by defendants.

After the examination, Herbert and the creditors' committee reached the conclusion that defendants were indebted to plaintiffs in a substantial sum. This sum was made up partly of items that arose from differing interpretations of the terms of the factoring agreement and partly from what were believed to be inaccuracies in defendants' accounts. The latter consist of two kinds of items, called in the trade "escheats" and "charge-backs." The former occur when a customer who is entitled to a discount fails to take it and pays the gross amount of the invoice. It was defendants' practice to retain these sums as a windfall to themselves. The second arises where a customer becomes entitled to a credit because of defective goods, short delivery or the like. Sometimes the customer notified defendants of the credit, sometimes the plaintiffs did, and sometimes both did. In the last instance, defendants' bookkeepers would not infrequently charge the credit against plaintiffs' account twice — once for each notification. This was due to the fact that there were several such bookkeepers and, unless both notifications were handled by the same individual, the bookkeeper posting the charge would not know that it had already been entered.

Herbert estimated the amount of these duplicate charge-backs at $57,500. Negotiations were entered into between the parties and a settlement of $62,500 was arrived at and the factors' account with plaintiffs adjusted on this basis.

In 1960 plaintiffs reached the conclusion that this settlement was induced by fraudulent representations on the part of defendants and their officers. They started suit. After appeal to this court on the pleadings in that action (15 A D 2d 87, 481), a new settlement was arrived at, embodied in a stipulation. It was agreed that plaintiffs were to have a complete audit of defendants' books by Herbert to determine whether there were any

erroneous charge-backs or debits. It was further agreed that, upon completion of the audit, the parties would make whatever adjustment the audit indicated was proper. In the event there was any difficulty in connection with the audit, or with the adjustment to follow it, either party could apply to the court for relief. The stipulation makes no mention of the " escheats ", and it was conceded that by oral agreement these were not to be considered.

When Herbert appeared to make the audit, its accountants were not given access to the books provided for in the stipulation. They made an audit based on what they were allowed to see, and reported back to their principals. This audit showed the amount of the charge-backs as some two thousand dollars less than what had been estimated originally. Plaintiffs refused to accept the audit as a compliance with the stipulation and, pursuant to its terms, made application to the court. By consent this application was made pursuant to the simplified procedure.

Concededly, and probably due to unfamiliarity with the procedure, the requirements of the simplified procedure were not complied with. There was no statement as required by CPLR 3032. No objection was made on this ground and the court accepted the brief and opening by counsel in lieu of the statement. We agree that service of the statement was waived and that the proceedings should not have been dismissed because of its absence. However, we believe that what ensued on the trial could at least in part be attributed to the failure to have a clear-cut statement of the issues and the relief requested. A simplified procedure does not mean no procedure at all.

Defendants first sought to prove that the books and records which were not made available were not necessary and would not change the figures in the audit. It was argued that Herbert already knew the figures from the " 1958 audit." From the facts above set out, this contention was wrong. But, whether right or wrong, it was not a permissible argument. The parties had agreed that the books were to be made available to Herbert for audit, and reasons for not complying were no substitute for compliance. Secondly, it was claimed that the audit would effect an intolerable burden on defendants because of the interference with their accounts. This contention is subject to the same objection and, in addition, lacks factual basis. Defendants organized a separate corporation with separate books to conduct the factoring operations of plaintiffs and their subsidiary corporations. It is the books of this corporation (Skirt Corporation of America, not to be confused with Skirt Company, one of plaintiffs' subsidiaries) which is currently inactive, which

are to be audited. No intolerable interference, if such was relevant, could be predicated on such an audit.

However, in lieu of the audit, which would have included some 3,000 accounts, defendants offered to open their books on any 100 accounts selected by plaintiffs. The court deemed this to be reasonable upon the assumption that, by comparing the result of the audit of these accounts with the same accounts in the 1958 examination, it could be seen whether there was any basis for further examination. While the 100 accounts could be audited, and the defendants duly made their books available and the audit was had, no comparison could be made. This was because the 1958 examination was not an audit, there was no breakdown of individual accounts and, in fact, plaintiffs' books did not have in them the data to make such a breakdown.

The court was under the impression that the failure to submit a comparison of the 1958 examination and the audit of the 100 accounts was a conclusive indication that the original settlement was made upon complete understanding of the situation, was probably advantageous to plaintiffs, and that defendants' books would not reveal anything to the contrary. But the ineluctable fact remains that the parties stipulated for a complete audit of defendants' books by Herbert and they have not had it. Once that is determined, plaintiffs have established their right to the relief sought in this proceeding and are entitled to a judgment directing an audit in accord with the stipulation. Should the plaintiffs as a consequence of the audit be entitled to any further relief, that would have to be sought in a new proceeding.

Judgment dismissing the proceeding should be reversed, on the facts and the law, with costs and disbursements to appellants, and judgment directed to be entered for plaintiffs for an audit of defendants' books in accord with the stipulation. Settle judgment.

BOTEIN, P. J., BREITEL, STEVENS, EAGER and STEUER, JJ., concur.

Judgment dismissing the proceeding unanimously reversed, on the law and on the facts, with $50 costs to appellants, and judgment for plaintiffs for an audit of defendants' books in accord with the stipulation. Settle order on notice.